# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO. 3:04CV377

| | |
|---|---|
| DANIEL WILLIE WRIGHT, JR.,     ) | |
|                          ) | |
|     Plaintiff,      ) | |
|                          ) | |
|    v.                ) | **ORDER** |
|                          ) | |
| ROBERT GRANT,     ) | |
|                          ) | |
|     Defendant.    ) | |
|                          ) | |

**THIS MATTER IS BEFORE THE COURT** on "Defendant's Motion for Summary Judgement" (Document No. 23) and "Brief ... in Support of Motion for Summary Judgment" (Document No. 24), filed October 27, 2005; *pro se* Plaintiff's "... Response to Summary Judgment" (Document No. 27), filed November 3, 2005; Defendant's "... Reply to Plaintiff's Responses ..." (Document No. 29), filed November 7, 2005; "Plaintiff's Motion to Amend Complaint ..." (Document No. 35) and "Plaintiff's Motion for Reconsideration of ... Appointment of Counsel" (Document No. 36), filed August 30, 2006; "Brief of Defendant ... in Opposition to Plaintiff's Motion to Amend Complaint" (Document No. 37) and "Brief ... in Opposition to Plaintiff's Motion for Reconsideration of ... Appointment of Counsel" (Document No. 38), filed September 13, 2006. The parties have consented to magistrate jurisdiction pursuant to 28 U.S.C. § 636(c), and this matter is now ripe for disposition.

Having carefully considered the record, applicable authority, and the arguments of the parties, the undersigned will <u>grant</u> the "Motion for Summary Judgment" (Document No. 23).

# I. FACTUAL AND PROCEDURAL BACKGROUND[1]

On January 30, 2002, Robert Grant ("Defendant"), a case manager for the Mecklenburg County Mental Health ACCESS Project, completed an Affidavit and Petition for Involuntary Commitment ("Affidavit and Petition"). In the Affidavit and Petition, Defendant alleged that he had sufficient knowledge to believe that Daniel Willie Wright, Jr. ("Plaintiff") was a proper subject for involuntary commitment and that Plaintiff was "mentally ill and dangerous to self or others or mentally ill and in need of treatment in order to prevent further disability or deterioration that would predictably result in dangerousness." Defendant was Plaintiff's Case Manager and listed the facts upon which his opinion was based as follows:

> Respondent has become increasingly agitated and bizarre. He has been sighted barking like a dog at the men's shelter. He has also left a letter with the word "Death" on the desk of the shelter's director. Respondent has disorganized thinking, loose associations and poor judgment. He is not taking his meds. Respondent is a danger to himself. (capitalization changed)

Defendant asked that the General Court of Justice, District Court Division, for Mecklenburg County, North Carolina issue an order to a law enforcement officer to take Plaintiff into custody for examination by a physician or eligible psychologist for the purpose of determining whether Plaintiff should be involuntarily committed.

That morning, a state Magistrate Judge entered a Findings and Custody Order – Involuntary Commitment ("First Commitment Order"). In the First Commitment Order, the state Magistrate Judge found that there were reasonable grounds to believe that the facts alleged in the Affidavit and

---

[1] The factual background is taken primarily from papers filed by Plaintiff which for the purposes of this Order are believed and viewed in the light most favorable to the non-moving party. See infra II. Standard of Review.

Petition were true. The state Magistrate Judge ordered that Plaintiff be taken into custody and examined by a physician or eligible psychologist.

Shortly thereafter, Plaintiff was taken into custody and examined by Dr. Harold J. Fuller, a physician at the Behavioral Health Center, CMC – Randolph ("Behavioral Health Center"). At approximately 1:00 PM on January 30, 2002, Dr. Fuller completed an Examination and Recommendation to Determine Necessity for Involuntary Commitment ("First Examination and Recommendation"). In the First Examination and Recommendation, Dr. Fuller found that Plaintiff had a history of mental illness; that he had been bizarre and threatening in his behavior; and that he had no insight into his need for treatment. Dr. Fuller concluded that Plaintiff was mentally ill, dangerous to himself, and marked his diagnosis as "schizophrenia, paranoid." Accordingly, Dr. Fuller recommended inpatient commitment for ten days at the Behavioral Health Center.

On January 31, 2002, a Deputy Clerk of Superior Court completed a Notice of Hearing/Rehearing for Involuntary Commitment ("Notice"). The Notice informed Plaintiff that a hearing would be held on February 6, 2002 at 10:00 A.M. to determine whether he should be committed, released, or recommitted for treatment. Later that day, a Deputy Sheriff effected service of the Notice on Plaintiff by delivering a copy of the Notice to Plaintiff.

On February 1, 2002, another medical doctor, Dr. Anthony J. DiNome, examined Plaintiff and completed an Examination and Recommendation to Determine Necessity for Involuntary Commitment (the "Second Examination and Recommendation"). It appears that the Second Examination and Recommendation was prepared for the use of the state court in the February 6, 2002 hearing. That doctor found that Plaintiff's thought process was disorganized, loose and tangential; that Plaintiff was guarded, paranoid and overtly hostile; and that he had expressions of

bizarre ideation. Dr. DiNome's diagnosis was schizophrenia. Accordingly, that doctor concluded that Plaintiff was mentally ill and dangerous to self and recommended that Plaintiff be committed for up to seven (7) days at the Behavioral Health Center and thereafter receive outpatient care for the remainder of ninety (90) days at the clinic for the Mecklenburg County ACCESS Project.

On February 5, 2002, the Clerk of Superior Court ordered that Plaintiff was indigent and entitled to the services of counsel and that he would be represented by the public defender. On February 6, 2002, state District Court Judge, the Honorable Resa L. Harris, held a hearing at which Plaintiff did not personally appear.[2] After the hearing, the state District Court Judge entered an Involuntary Commitment Order – Mentally Ill (the "Second Commitment Order"). In the Second Commitment Order, the state District Court Judge found – by clear, convincing and cogent evidence – as facts all matters set out in the Second Examination and Recommendation and concluded that Plaintiff was mentally ill and dangerous to self. The state District Court Judge ordered that Plaintiff be committed to the Behavioral Health Center for an additional seven (7) days and thereafter committed to outpatient care at the clinic for the Mecklenburg County ACCESS Project for the balance of ninety (90) days. Plaintiff appears to have been involuntarily committed from January 30, 2002 until on or about February 11, 2002.

On February 13, 2003, Plaintiff filed a Petition for a Contested Case Hearing (the "Administrative Petition") in the Office of Administrative Hearings for Mecklenburg County, North Carolina.[3] In the Administrative Petition, Plaintiff alleged that he was sent to the Behavioral Health

---

[2] In the Matter of Daniel Wright, Mecklenburg County District Court, File No. 02SPC314 (February 6, 2002).

[3] Wright v. Mecklenburg County, Office of Administrative Hearings, File No. 03-DHR-0194 (May 1, 2003).

Center because he "gave artwork to the director of the shelter" and that "they would not listen to me." On May 1, 2003, the Office of Administrative Hearings dismissed the Administrative Petition. Included in that Order of Dismissal was the following pertinent language; "Any contention that the Petitioner, Daniel Willie Wright, Jr., had regarding the Respondent's filing of an Affidavit and Petition for Involuntary Commitment should have been addressed to the District Court of Mecklenburg County in the nature of an Apeal, [sic] pursuant to N.C.G.S. § 122C-272."

On August 2, 2004, Plaintiff – who is not represented by counsel – brought a Complaint in this Court, alleging that Defendant had acted in violation of Title 42, Section 1983 of the United States Code. In the Complaint, Plaintiff alleges that he is disabled; that he told Defendant what happened and that Defendant did not listen to him; that his wrists were hurt when he was put into handcuffs; that he was pushed into a wall by another patient at the Behavioral Health Center; and that he experienced mental anguish for which he is still taking medication. The Complaint states that Plaintiff believes he is entitled to five billion ($5,000,000,000.00) dollars in damages.

On April 27, 2005 the undersigned, taking all the allegations in the complaint as true and construing the facts alleged in the light most favorable to the *pro se* Plaintiff, denied Defendant's Motion to Dismiss. In doing so the Court noted that there is a qualitative difference between the mere allegation of a constitutional violation and the allegation of specific facts, if true, that would constitute a deprivation of a Constitutional right *and* overcome the potential defense of qualified immunity. On October 27, 2005 Defendant filed a Motion for Summary Judgement.

## II. STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure requires that summary judgment be granted if the pleadings, responses to discovery, and affidavits, if any, establish that "there is no

genuine issue as to any material fact...." Fed.R.Civ.P. 56(c). As this Court has previously explained,

> Defendant as the moving party has the initial burden to show a lack of evidence to support Plaintiff's case. If this showing is made, the burden then shifts to the Plaintiff who must convince the Court that a triable issue does exist. Such an issue will be shown "if the evidence is such that a reasonable jury could return a verdict for the [Plaintiff]."

Boggan v. Bellsouth Telecomms., Inc., 86 F.Supp. 2d 545, 547 (W.D.N.C. 2000) (citations omitted).

A genuine issue of material fact exists only if a reasonable jury could return a verdict for the plaintiff on the evidence presented. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). The non-moving party opposing summary judgment "may not rest upon the mere allegation or denials of his pleading, but his response ... must set forth specific facts showing that there is a genuine issue for trial." See id. at 248 (quoting First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 288 (1968)). Importantly, in deciding a motion for summary judgment, the court views the evidence presented in the light most favorable to the non-moving party - that is, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." See Anderson, 477 U.S. at 255.

### III. DISCUSSION

Plaintiff alleges in his Complaint that jurisdiction is proper before this Court under 42 U.S.C. § 1983:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ....

6

42 U.S.C. § 1983 (2006). Plaintiff contends that Defendant did not listen to him and that his civil rights/liberties were violated. Defendant also alleges that his wrists were hurt when he was handcuffed, that during his involuntary commitment a fellow patient pushed him into a wall, and that as a result of his involuntary commitment he has suffered mental anguish.

Throughout the proceedings of this case the Court has been cognizant of Plaintiff's *pro se* status and has carefully viewed the facts and his motions in the most favorable light. Viewing all of the evidence in his favor, and accepting it as true, the Court now finds that no genuine issue of material fact exists. Defendant does not challenge Plaintiff's version of the events that led to his involuntary commitment and the Court sees no reason to disbelieve those events. Plaintiff in response to this summary judgment motion has not set forth evidence showing that there is a genuine issue for trial. Plaintiff's allegations of the harms he suffered fall short of creating a triable issue on Defendant's liability for those harms.

All of the facts, pleadings, admissions and affidavits presented by Plaintiff support Defendant's claim that the Plaintiff was involuntarily committed pursuant to the laws of North Carolina. The North Carolina General Statutes provide under section 122C-261:

> (a) Anyone who has knowledge of an individual who is mentally ill and either (i) dangerous to self, as defined in G.S. 122C-3(11)a., or dangerous to others, as defined in G.S. 122C-3(11)b., or (ii) in need of treatment in order to prevent further disability or deterioration that would predictably result in dangerousness, may appear before a clerk or assistant or deputy clerk of superior court or a magistrate and execute an affidavit to this effect, and petition the clerk or magistrate for issuance of an order to take the respondent into custody for examination by a physician or eligible psychologist. The affidavit shall include the facts on which the affiant's opinion is based.
>
> (b) If the clerk or magistrate finds reasonable grounds to believe that the facts alleged in the affidavit are true and that the respondent is

probably mentally ill and either (i) dangerous to self, ... or dangerous to others, ... or (ii) in need of treatment to prevent further disability or deterioration ... the clerk or magistrate shall issue an order to a law enforcement officer or any other person authorized under G.S. 122C-251 to take the respondent into custody for examination by a physician or eligible psychologist.

N.C.G.S. § 122C-261 (2006).

The Defendant worked as a case manager for the Mecklenburg County Mental Health /ACCESS Project and was the Plaintiff's case manager. As case manager, Defendant was in a position to either observe and/or become aware of Plaintiff's behavior at the men's shelter. Plaintiff's behavior included barking, acting agitated, leaving art work with the men's shelter director that could be interpreted as threatening, and not taking his medication. This behavior gave Defendant cause for concern. It was not only reasonable for Defendant to follow the North Carolina statute, as set out above, to petition for the Plaintiff's involuntary commitment, it was prudent.

Defendant merely initiated a series of steps that eventually led to Plaintiff's lawful commitment. The North Carolina Court of Appeals has described the procedures for involuntary commitment:

> Within a reasonable time after a respondent subject to an involuntary commitment order of a magistrate is taken in custody, he must be transported to an approved facility. N.C. Gen. Stat. § 122C-263 (2003). Within 24 hours of arrival at the facility, he must be examined by a physician or eligible psychologist. Id. If the physician or eligible psychologist makes a determination that the respondent is a danger to self or others, he shall recommend inpatient treatment. Id. At a time no later than the next business day following the finding of dangerousness to self or others ... the respondent must be examined a second time by a physician, and if the respondent is again determined to be a danger to self or others, he will be detained pending a full hearing before the district court. N.C. Gen. Stat. §

122C-266 (2003). The hearing shall be held within 10 days of
respondent's being taken into custody. N.C. Gen. Stat. § 122C-268
(2003).

In re Zollicoffer, 165 N.C. App. 462, 467-68, 598 S.E. 2d 696, 699-700 (2004).

The Court of Appeals's observations on these procedures are applicable to the instant case:

> We must strike a balance between the intrusion on personal liberty
> and the need for an efficient method of protecting the public from
> those who may be dangerous to themselves or others due to mental
> illness. ... The two psychological examinations and the hearing within
> 10 days of the initial detainment in this context provides respondent
> with adequate assurance that he is not being improperly detained.

Id. at 468, 598 S.E.2d at 700.

"Plaintiff's Response to Defendant's Request for Admissions"(Document No. 26) provides all the documentation necessary to establish that the procedure outlined above was followed. First, a state magistrate judge found that there were reasonable grounds based on Defendant's Affidavit and Petition to believe that Plaintiff was mentally ill and dangerous to himself or others. Next, a physician at the Behavioral Health Center examined Plaintiff and concluded that he was indeed mentally ill, a danger to himself and that he should be committed to inpatient treatment. Soon thereafter a second physician confirmed the diagnoses of the first doctor.[4] Finally, Plaintiff was appointed counsel and the circumstances of his commitment were reviewed by a state District Court Judge who found that Plaintiff was mentally ill and a danger to himself and ordered his involuntary commitment. Defendant in this matter only set in motion a

---

[4] Pursuant to N.C.G.S. § 122C-266 (a) and (e) the second examination should be conducted within 24 hours, or on the next regular working day. The Court is unaware of any reason for delay in this case, but finds that if such delay occurred, it did not create undue prejudice against Plaintiff and has no bearing on Plaintiff's claims against Defendant.

9

process for commitment that followed North Carolina statute. Within that process a state Magistrate Judge, two doctors and a state District Judge all confirmed the allegations Defendant made in his Affidavit and Petition that Plaintiff was a danger to himself and needed involuntary commitment.

The Court is also persuaded by the Defendant's argument based on the affirmative defense of qualified immunity. The Fourth Circuit has analyzed qualified immunity as follows:

> Qualified immunity shields public officials from personal liability for discretionary actions provided their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." ... The question of whether an official is entitled to qualified immunity may be answered as a matter of law by determining "whether the legal norms allegedly violated by the defendant[s] were clearly established at the time of the challenged actions...." To be clearly established, "[t]he contours of the [plaintiff's] right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." The resolution of the legal question requires "consideration of the factual allegations that make up the plaintiff's claim."

Renn By and Through Renn v. Garrison, 100 F.3d 344, 349 (4th Cir.1996) (internal marks and citations omitted).

In reviewing the factual allegations, the Court finds that at the time of the underlying incident the Defendant was an employee of Mecklenburg County, was appropriately following procedures outlined by the North Carolina General Statutes, and thus had no reason to suspect he risked violating the Plaintiff's constitutional rights. Therefore, Defendant has properly asserted the defense of qualified immunity.

Accordingly, the undersigned finds there are no facts upon which a reasonable jury could return a verdict for Plaintiff. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

The Court expresses no opinion as to Defendant's other affirmative defenses finding that the arguments above exceed the minimum requirements for the undersigned to grant Defendant's Motion for Summary Judgment.

## IV.  CONCLUSION

**IT IS, THEREFORE, ORDERED** that Defendant's "Motion for Summary Judgment" (Document No.23) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's "Motion to Amend" (Document No. 35) and "Motion for Reconsideration" (Document No. 36) are **DENIED AS MOOT**.

Signed: December 1, 2006

David C. Keesler
United States Magistrate Judge